UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YOUSEF ISMAIL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 05 C 409 |
| | ) |
| JOHN E. POTTER, Postmaster General | ) |
| of the United States Postal Service, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before this Court on a motion for summary judgment filed by Defendant John E. Potter, Postmaster General of the United States Postal Service ("Postal Service"). For the following reasons, we grant summary judgment on all claims in favor of the Postal Service.

## PRELIMINARY MATTER

Ismail filed a motion to strike portions of the Postal Service's Reply, arguing that the Postal Service added additional facts to its reply to Ismail's Rule 56.1 statement and included lengthy argument, both in violation of the requirements of Local Rule 56.1. The Postal Service filed a single document, in which it 1) replied to Ismail's responses to the Postal Service's Rule 56.1(a) statement and 2) responded to Ismail's Rule 56.1(b) statement. The Postal Service's replies to Ismail's responses to the Postal Service's

Rule 56.1 statement are not authorized by Rule 56.1 and accordingly were disregarded by this court. *See White v. Sundstrand Corp.*, No. 98 C 50070, 2000 WL 713739 at *2 (N.D. Ill., May 23, 2000). However, there is nothing improper about the Postal Service's citations to new exhibits or additional facts in its response to Ismail's additional statement of material facts. Rule 56.1 requires that denials be supported by the record, and it would be illogical to limit the Postal Service's denials to only those facts it had previously cited in its Rule 56.1 statement. L.R. 56.1(a); 56.1(b)(3)(B). This is not a case, as Ismail claims, of the Postal Service submitting an entire supplemental statement of facts. *See e.g. White*, 2000 WL 713739 at *2. Finally, this Court has reviewed Ismail's claims concerning paragraphs in the Postal Service's Response which Ismail has determined should be stricken and has determined that only two of the Postal Service's responses may arguably contain a few lines of additional argument. That said, this Court is not about to begin a practice of line-editing Rule 56.1 statements to excise particular sentences in *de minimus* cases of violations of Rule 56.1. Accordingly, Ismail's Motion to Strike is denied.

## BACKGROUND

The following facts are gleaned from the parties' Rule 56.1 statements. Statements of fact not properly before us or unsupported by the record have been disregarded. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281 (7th Cir. 1997).

Plaintiff Yousef Ismail ("Ismail") was born in Israel, raised in Jordan, came to the United States in 1992 and became a citizen in 1996. Ismail began working at the Carpentersville Post Office in August 2001 as a city letter carrier. During the time Ismail was employed at the Carpentersville Post Office, Dennis Leisz was his direct supervisor, and Ralph Kaiser was Postmaster.

In January 2003, while delivering mail, Ismail was injured after an altercation with a dog. Between January and March 2003, Ismail was off work and then performed some limited duty assignments. Although the parties dispute whether or not the Postal Service asked Ismail's physician, Dr. Wen, to alter his work restrictions, it is not disputed that on March 13, 2003, Dr. Wen permitted Ismail to go back to work with the restriction that he could carry no more than five pounds.

On March 14, 2003, Postmaster Kaiser was performing street supervision of Ismail, although Kaiser had never before observed Ismail. He observed Ismail delivering mail slowly and confronted him. What happened next is a matter of dispute. For the purposes of this motion, we will accept Ismail's version as true. Ismail alleges that Kaiser threatened to write Ismail up three times, fire him, and send him back to his country. Kaiser then issued Ismail a letter of warning, on March 17, 2003, regarding his slow delivery pace. Ismail admitted that he did not deliver the route on time but contends that his slowness was due to his injury. Ismail filed grievances against Kaiser

concerning the letter of warning, alleged improper contact with Dr. Wen and unprofessional conduct during the March 14, 2003, confrontation. The letter of warning was rescinded, and the remaining grievances were resolved. After the March 2003 incident, Dr. Wen placed Ismail on more restrictive limitations, which included a restriction on lifting more than five pounds and on walking outside.

Starting in May 2003, Ismail was assigned cleaning duties by Kaiser on at least one day. There is considerable dispute as to these cleaning duties, including (1) whether Ismail was assigned cleaning duties after he informed the Postal Service that Dr. Wen changed his restrictions to prohibit any cleaning duties; (2) how many times Ismail was assigned cleaning duties; (3) whether Kaiser observed as Ismail cleaned toilets and urinals; (4) and when Kaiser stopped asking Ismail to perform cleaning duties. The parties do agree, however, that the cleaning assignments ceased at the end of May or beginning of June, 2003. At most, then, Ismail was assigned cleaning duties for a little more than a month. Ismail testified that he felt humiliated by the cleaning assignments and the cleaning hurt his back.

Ismail claims that Lyndda Smith, Ricky Miller, Ray Adam, Raymond O'Claire, Tom Hart, and Theresa Tripkovich were all Caucasian, similarly situated employees, who were treated better than he was when they were injured in that they were not required to clean bathrooms. However, Ismail admitted that Miller, Adam, and

O'Claire were all able to perform their regularly assigned duties while they were injured. As to Smith, Ismail admitted in his EEO affidavit that Smith could walk the street and case mail - two activities which Ismail's restrictions prevented him from doing. As to Hart, Ismail admitted in his deposition that Hart was completely unable to walk and that he was not sure what Hart's medical restrictions entailed. As to Tripkovich, Ismail admitted that she is a rural mail carrier, that she drives, rather than walks, her mail delivery route, and that he was not sure what her medical restrictions were. Further, Ismail provided no evidence to counter Kaiser's attestation that Tripkovich, a Caucasian woman, was also assigned to clean lavatories while on limited duty.

On June 13, 2003, Ismail requested emergency leave from June 14 to June 29, 2003, to visit his ill mother in Jordan. The Postal Service granted his request. Ismail did not tell his supervisors that he did not have a reservation that would guarantee his return to work on the 29th. When he discovered that he was unable to fly out on the 29th from Jordan, he failed to call his supervisors, claiming that he was unable to use any telephones in Jordan to make a long distance call and could not purchase a telephone card. Ismail did not return to work until July 7, 2003. Ismail requested emergency leave upon his return to the post office in July 2003, for the period of June

30, 2003 to July 5, 2003. Ismail's request was denied, and he filed a grievance concerning that denial.

On August 6, 2003, Ismail was suspended, without loss of pay or time, for 14 days based on his absence without leave in early July 2003. Although the protocol is to issue disciplinary action within two weeks from the time of an incident, Dennis Liesz issued the suspension in August, with the concurrence of Postmaster Kaiser and review by the Postal Service's Labor Relations Office. Ismail filed a grievance concerning the suspension, which was later reduced to a letter of warning.

On August 7, 2003, Ismail contacted an EEO counselor to complain that he was a victim of race and disability discrimination. In the EEOC proceedings, Ismail identified his race as "Israeli." In his EEO affidavit, Ismail stated that he believed he was assigned cleaning duties based upon his race but that the hostile environment began when he became disabled.

In late October or early November, 2003, Kaiser received documentation from an independent medical examiner, Dr. Lanoff, indicating that Ismail could return to full duty without restrictions and that Ismail "simply has subjective complaints out of proportion to objective findings." Dr. Lanoff cited, as an example, that although patients with pain in one leg generally use the cane in the opposite hand to lean away from the painful side, Ismail was using the cane in the same hand - leaning onto his

painful side. Kaiser contacted the Postal Service's Injury Compensation Department, and was advised to provide Ismail with a written offer to return to full duty.

In November 2003, based on Dr. Lanoff's fitness for duty examination, the Postal Service stopped offering Ismail limited duty job assignments. Ismail rejected Kaiser's offer of return to full duty and was sent home. Ismail contends that Kaiser's decision was procedurally deficient, in that it is not customary to contact the Postmaster when Injury Compensation receives reports that an employee can return to work. Instead, the Department of Labor makes the decision. Further, ELM Section 545.65 provides that in cases in which the fitness-for-duty examination conflicts with the attending physician's finding, the matter should be referred to the Office of Workers' Compensation for resolution. Although Dr. Wen disagreed with Dr. Lanoff's medical evaluation, Ismail never filed a grievance with respect to this issue.

After November 2003, Ismail was required to call the Post Office each day before 7:00 a.m., and each day Ismail requested to return to work under his physician's restriction. Each day, his supervisor denied the request. Ismail did not work but instead collected workers' compensation payments for the next ten months. In February 2004 and July 2004, independent medical examinations concluded that Ismail could return to full time work. Based on the July 2004 medical examination, the Department of Labor discontinued Ismail's workers' compensation benefits.

Ismail returned to work in August 2004, at Kaiser's request, and under the same restrictions that had been effect prior to November 2003, which did not include delivering mail. Ismail has worked overtime duties since his return.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). At summary judgment, we construe all facts and draw all inferences from the record in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Title VII prohibits employers from discriminating against individuals in hiring and discharging employees, as well as with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. 2000e-2(1). Title VII's prohibition on discrimination also

encompasses a prohibition on requiring employees to work in a discriminatory hostile or abusive work environment. *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). Section 2000e-16 of Title VII, which prohibits specified agencies of the federal government, including the Postal Service, from engaging in any discrimination based on race, color, religion, sex, or national origin, has generally been read as extending the benefits of Section 2000e-2 and e-3 to public employees. *Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006).

I.      **Ismail's Retaliation and Disability Claims**

In his complaint, Ismail alleged that Postmaster Kaiser discriminated and retaliated against him because of his job injury and resultant partial disability, as well as because of his Middle-Eastern heritage and race, in violation of 42 U.S.C. 2000e *et seq*. In Ismail's Response to Defendant's Motion for Summary Judgment, however, Ismail states that he seeks recovery "solely based" upon the hostile work environment he allegedly endured between March 2003 and August 2004, and denies that he is asserting any claims under the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. Ismail has waived any claims, therefore, other than his claim that he was subjected to a hostile work environment on the basis of his national origin, by failing to support or develop any claims at summary judgment. *See Culver v. Gorman & Co.*, 416 F.3d 540, 550 (7th

Cir. 2005). Accordingly, summary judgment is granted as to Ismail's claims of retaliation and his claims of discrimination on the basis of his disability.

## II.  Ismail's Hostile Environment Claim

In order to survive summary judgment on his remaining hostile work environment claim, Ismail must establish that: (1) he was subjected to unwelcome harassment, (2) the harassment was based on his national origin, (3) the harassment was severe or pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability. *See Velez*, 442 F.3d at 1047. Ismail has not produced evidence to establish either that the harassment was based on his national origin or that the harassment was sufficiently severe or pervasive that it created a hostile working environment.

Assuming that all of the incidents cited by Ismail could qualify as "harassment," Ismail still cannot show that the harassment was based upon his national origin.[1] Ismail

---

[1]Ismail cites his allegedly heavy accent and his Jordanian upbringing as patent markers of his national origin, has identified himself as "Israeli" and "Middle-Eastern" and has generally used the terms "race" and "national origin" interchangeably in his pleadings. Before the EEOC, Ismail identified the type of discrimination as "race" and identified his race, rather than his national origin, as "Israeli," but his determination of whether "Israeli" is a race or a national origin is not determinative. His claim as to the basis of his discrimination was clear enough to put the Postal Service on notice during the administrative proceedings. Racial harassment claims and national origin claims are generally evaluated using the same standard, and this Court is reluctant to delve

must show that the alleged harassment was "sufficiently connected" to his national origin in character or purpose before we can construe the harassment as being motivated by hostility to Ismail's national origin. *Beamon v. Marshall & Isley Trust Co.*, 411 F.3d 854, 863-4 (7th Cir. 2005). To determine whether or not Ismail's treatment was "based on" his race, we examine the record for either direct evidence of discrimination, or indirect evidence of discrimination according to the standards set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 299 (7th Cir. 2004). Under the indirect approach, Ismail can establish a prima facie case of discrimination if he can show that: (1) he is a member of a protected class; (2) that he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; (4) he was treated less favorably than other, similarly situated employees. *Id.*

Ismail contends that all of the actions which Postmaster Kaiser either directly took towards him, or was aware that others took towards him, were taken based on Ismail's national origin. However, Ismail can point to only a single comment made by Kaiser to establish any connection between his treatment on the job and his national

---

unnecessarily into the fields of anthropology and sociology. *See Nair v. Nicholson*, No. 05-3673, slip. op. at 2 (7th Cir., Oct. 2, 2006) (noting that discrimination on the basis of unspecified foreign origin might conceivably be a violation of Title VII).

origin - the alleged threat by Postmaster Kaiser that he would send Ismail "back to his country" in March 2003. Based on that one comment, Ismail claims that all other actions taken against him from March 2003 to August 2004 were motivated by Kaiser's discriminatory animus.

Ismail does not allege that Kaiser ever said anything to him again concerning his national origin. Instead, as further evidence of Kaiser's continuing animus, Ismail claims that while he was on limited duty, Kaiser treated him differently from other Caucasian workers on limited duty. Specifically, Ismail alleges that for a little more than a month between May and June 2003, one of his assignments included cleaning the bathrooms at the Post Office, at times under Kaiser's supervision, even though such activities violated his doctor's restrictions. Ismail cannot show, however, that Kaiser's animus was due to Ismail's national origin. He cites no direct evidence of discriminatory animus other than the March 2003 comment. He can provide no circumstantial evidence of discrimination because he cannot show that any other similarly situated employees were exempted from cleaning bathrooms when they were injured. *See e.g. Beamon,* 411 F.3d at 861-2 (discussing requirements for proving a prima facie case of discrimination). Ismail has presented no evidence to counter the Postal Service's claim that at least one mail carrier, Theresa Tripkovich, was asked to clean bathrooms when she was injured. The majority of the mail carriers proffered by

Ismail as "similarly situated" worked under different restrictions while on limited duty - for example, the majority of mail carriers cited by Ismail could all perform their regular duties. As to the remaining carriers, Hart was unable to walk, and Tripkovich was a rural mail carrier, who could and did drive in the performance of her duties.

As to the remaining adverse employment actions which Ismail alleges comprises his hostile working environment, the August 2006 suspension and the November 2003 denial of limited duty job opportunities, both events lack evidence of animus based on Ismail's national origin, and could have been imposed upon any employee without any alteration in character and purpose. *See Beamon*, 411 F.3d at 864. . First, when alleging that he has been singled out for discriminatory discipline, a plaintiff must also show that he was meeting his employer's legitimate expectations, *Herron,* 388 F.3d at 299, and that the employer treated similarly situated employees differently, *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 728 (7th Cir. 2004). Ismail cannot show that in August 2003 he met the Postal Service's legitimate expectations when he was absent without leave and without explanation for five days. Similarly, Ismail cannot show that when three physicians judged him to be fit for full duty, he met the Postal Service's legitimate expectations when he continued to demand limited duty job opportunities, or when he refused to work unless he could work under doctor's restrictions. Finally,

Ismail presents no evidence that similarly situated employees who were either AWOL or judged fit for full duty were treated differently.

In addition, any attempt to stretch Kaiser's March 2003 comment to impute discriminatory animus to the August and November 2003 decisions must fail. Where a supervisor does not have ultimate authority over adverse employment actions, any discriminatory comments made by that supervisor is not direct evidence that discriminatory animus motivated the decision. *Davis v. Con-Way Transp. Central Express, Inc.,* 368 F.3d 776, 783 (7th Cir. 2004). The August 2003 suspension was investigated and issued by Ismail's direct supervisor, with the concurrence of Kaiser and of the Postal Service's Labor Relations Office. Third, the November 2003 denial, while presented by Kaiser, was presented with the approval and direction of the Postal Service's Injury Compensation Department. The third fitness for duty examination concluded that Ismail should be returned to full duty. In neither of these cases were the Postal Service's decisions merely a "rubber-stamp" of Kaiser's recommendation. *Id.*

Even if we assume that each of the above-described actions were taken because of Ismail's national origin, his claim still fails because he simply cannot demonstrate that his working environment was objectively hostile. To determine when a workplace becomes objectively hostile, we consider a series of factors: "the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and

whether the harassment unreasonably interferes with an employee's work." *Valentine v. City of Chicago*, 452 F.3d 670, 681 (7th Cir. 2006). The incidents that Ismail cites - Kaiser's comment, the March 2003 letter of warning for delivering his route slowly, duty assignments during his injury which Ismail perceived as humiliating in May and June 2003, the purportedly unwarranted discipline in August 2003, and the denial of limited duty assignments in November 2003 - simply are neither so severe, nor so pervasive, as to qualify as having transformed his environment into a hostile and abusive environment. We address each of Ismail's incidences separately and then consider their effect as a whole. First, without condoning Kaiser's alleged statement, we note that one utterance alone, especially an utterance as ambiguous as Kaiser's, does not create an objectively hostile work environment. *Smith v. Northeastern University of Illinois*, 388 F.3d 559, 567 (7th Cir. 2004); *see also Whittaker v. Northern Illinois University*, 424 F.3d 640, 646 (7th Cir. 2005). Second, the cleaning duties required of Ismail during one month of the eight months Ismail was on limited duty are not sufficiently severe or pervasive as to make his environment "hellish." See *Whittaker*, 424 F.3d at 645 (noting that for hostile environment claims, threshold for plaintiffs is high, as "[t]he workplace that is actionable is one that is 'hellish.'") Even if, as he alleges, Ismail had to clean restrooms for one month, at times under Kaiser's direct supervision, the work assignment was neither so severe, considering Ismail's duty

restrictions and the practice at the Post Office, nor so pervasive as to create a hellish workplace. Finally, as to the two unfavorable personnel actions - the August 2003 suspension and the November 2003 refusal to offer more limited duty assignments - in neither instance can Ismail demonstrate that he was unfairly singled out for unwarranted discipline. Taken as a whole, the events identified by Ismail simply were not objectively severe enough to so transform the terms and conditions of his employment as to create a "hellish" environment.

## CONCLUSION

Based on the foregoing, the Postal Service's motion for summary judgment is granted.

Charles P. Kocoras
United States District Judge

Dated:     October 18, 2006